### BAKER, SMITH & CO., Inc., v. GARDEN CITY FAN CO.

(Circuit Court of Appeals, Seventh Circuit. January 11, 1921.)

#### No. 2796.

Sales ⊂⊃174—Buyer held not chargeable with breach of contract authorizing rescission by seller.

A contract by defendant to furnish fans and other building equipment to plaintiff required it to be shipped to plaintiff and delivered f. o. b. cars at a designated station in Pittsburgh; that a detailed duplicate memorandum of each shipment should be mailed to plaintiff one day before shipment and provided for payments ten days after each delivery.

*Held,* that shipment of a carload of the equipment by defendant from Chicago to Pittsburgh, consigned to its own order, subject to freight charges and without notice to plaintiff, followed by a letter six days later to plaintiff at its New York office, advising of the shipment and the making of a draft for the same, with bill of lading indorsed in blank attached, was not in compliance with the contract, and that plaintiff's refusal to pay the draft presented in New York, while offering to make payment as soon as the shipment was duly delivered, was not a breach of the contract, which justified its rescission by defendant.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action at law by Baker, Smith & Co., Incorporated, against the Garden City Fan Company. Judgment for defendant, and plaintiff brings error. Reversed.

Edward R. Johnston, of Chicago, Ill., for plaintiff in error.
Robert H. Stoll, of Chicago, Ill., for defendant in error.

Before BAKER, ALSCHULER, and PAGE, Circuit Judges.

PAGE, Circuit Judge. The plaintiff in error sued the defendant in error in the District Court of the United States for the Northern District of Illinois, Eastern Division, to recover damages for failure to deliver certain fans, vento coils, etc., purchased by plaintiff from defendant. The successful defense was based upon the claim that defendant had the right to and did rescind the contract because of the failure of the plaintiff to pay for vento coils shipped. Upon the trial the jury, under instruction of the court, found the issues for the defendant, and this is a writ of error to reverse the judgment entered thereon.

The fans, etc., were ordered of defendant by plaintiff on December 7, 1915, the material part of the order being:

"For the satisfactory performance and fulfillment of this order we agree to pay you the sum of eight thousand five hundred ($$8,500.00) dollars, payment to be made as may be mutually agreed upon between yourself and our home office in New York City.

"Ship Via Pennsylvania Railroad, Duquesne freight station, Pa., to Baker, Smith & Co., Inc., 131 Water street, Pittsburgh, Pa.

"Duplicate detail memorandums of each shipment must be mailed the day previous to shipping, and state how shipped, for what job and number of the piece."

The following method of payment was agreed upon:

"Payment on vento radiation furnished to be made within ten days from date of shipment, less 1% pro rata as the radiation is shipped."

On June 6, 1916, at Chicago, defendant wrote plaintiff:

"We are inclosing herewith in duplicate invoices for vento for indirects, shipped to Pittsburgh on the 1st inst., and we have issued our sight draft at ten days from date of shipment, through our bankers here, B/L attached to sight draft. * * *"

The bill of lading, which was nonnegotiable, shows Garden City Fan Company, Duquesne freight station, consignee; destination, Pittsburgh, Pa.; American Radiator Company, shipper. The bill of lading was indorsed by defendant in blank. The draft to which the bill of lading was

attached was dated Chicago, June 1st, at ten days' sight, and was addressed to plaintiff, not at its Pittsburgh address, but to its New York address. Upon June 8th plaintiff wrote defendant:

"We are in receipt to-day of your letter dated the 6th inst. * * * The sight draft to which you refer in your letter has been presented to us and promptly returned to the bank messenger who brought it, without payment."

The defendant was therein referred to plaintiff's letter of April 12th as to the terms of payment. The terms were not agreed upon in the letter of April 12th, and therefore reference to that letter was an error, but plaintiff also said, in the letter of June 8th:

"The bill will be forwarded at once to our Pittsburgh representative, who will inform us of the arrival and approval of this material. When he O. K.'s the bill to this effect, there is no reason why it should not be passed for prompt payment."

No reply was made to that letter. On June 19th, from New York, plaintiff again wrote the defendant, saying they were in receipt of advice from their Pittsburgh office that they had not received as yet the bill of lading or any other document which might enable them to procure the vento radiation, shipped some time before, and—

"We request that you make arrangements with our Pittsburgh office, so that they can get this apparatus immediately."

On June 22d defendant wrote plaintiff:

"Replying to your letter of the 19th inst., evidently you have ignored the fact that we sent you the B/L for the vento shipped to Pittsburgh, and also wrote you on the 6th inst., inclosing duplicate invoice, and advising you that the B/L was attached to ten-day sight draft, which we issued through our local bankers."

Then is recited the fact of the receipt of plaintiff's letter of the 8th and the refusal by plaintiff to make payment. The letter also recites that the terms of payment are of the essence of the contract, and that the terms are set forth in the letters of April 7th and 14th from defendant and of April 18th from plaintiff, and adds:

"We fulfilled our contract to the letter, and are astonished at your refusal to fulfill your part of the contract. * * * By reason of your refusal to make payments, we hereby rescind the contract, and will not ship any further goods thereon. * * * The goods are now at Pittsburgh, with demurrage accruing on them every day. and even at this late date you have made no tender whatsoever in payment of these goods."

On June 27th plaintiff wrote and explained the error in their letter of the 8th as to terms of payment and how it occurred. Some other correspondence followed, but it does not affect the issues here. The record shows that about a month after the shipment of the ventos they came into the possession of the plaintiff, who paid $44.10 freight to get them.

Defendant's Pittsburgh representative, on June 8, 1916, telephoned plaintiff's office that he had received notice from the Pennsylvania Railroad Company that a car with a shipment of vento coils was at the Scully Yards to the order of the defendant, that he assumed that those were the vento coils for plaintiff, and asked what he should do with

them. He was told that they should be delivered to the Duquesne freight station. Nothing more was heard about the matter until June 26th, when plaintiff's representative was advised by the Pennsylvania Transfer Company that the vento coils were at the Duquesne freight station, and asked what they wanted done with them. The same day the coils were delivered to the City-County Building and installed therein.

The sole question here for consideration is: Was the plaintiff in default on June 22, 1916, when defendant undertook to rescind the contract? The accepted order from plaintiff provided that the fans should be furnished and delivered f. o. b. cars Pittsburgh, Pa. It also provided that they should be shipped via Pennsylvania Railroad, Duquesne station, Pa., and they were to be shipped to Baker, Smith & Co., Incorporated, 131 West Water street, Pittsburgh, Pa. Defendant was also required to comply with the following:

"Duplicate detail memorandums of each shipment must be mailed the day previous to shipping, and state how shipped, for what job, and number of the piece."

Defendant's attempted performance did not comply with any of these conditions. It did not furnish nor deliver the goods f. o. b. cars Pittsburgh, Pa. The freight charges followed the shipment and were paid by plaintiff, but not earlier than June 14th or June 26th. The ventos were not shipped to Baker, Smith & Co., but were shipped to Garden City Fan Company on a nonnegotiable bill of lading, indorsed in blank. If the duplicate detail memorandum called for by the contract was sent, it must have been what is termed in the letter of June 6th as "duplicate invoices," but in any event, instead of being sent to plaintiff on May 31st, no notification whatever was sent until June 6th, seven days after the time provided in the contract. There is no evidence in the record that what was sent then to plaintiff stated for what job or the number of the piece. The contract provided that "for the satisfactory performance and fulfillment of this contract we agree to pay the sum of $8,500," and, while the payments as finally agreed upon were to be made, not upon the arrival or delivery of the goods at the Duquesne station, but were to be made within 10 days from the date of the shipment, it is perfectly clear from the contract that the only shipment which could require such payment would be one complying in all substantial respects with the terms and conditions of the contract. Plaintiff was not, therefore, in default on June 22, 1916, and defendant had no right to rescind the contract at that time.

The judgment is reversed, and the cause remanded, for further proceedings in harmony with this opinion.